IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 07-00008-01-CR-W-DW |
| CARL W. BUSSEY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION TO DENY**
**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**
**FOR MISCONDUCT**

Before the court is defendant's motion to dismiss the indictment on the ground that Special Agent Walter R. Schaefer was involved in misconduct before the grand jury. I find that defendant has not met his burden of showing that any intentional or reckless misstatement was presented to the grand jury or that he was prejudiced in any way by anything that occurred before the grand jury. Therefore, defendant's motion to dismiss the indictment should be denied.

*I.    BACKGROUND*

On January 5, 2007, an indictment was returned charging defendant with one count of making a false statement, in violation of 18 U.S.C. § 1001, and three counts of perjury, in violation of 18 U.S.C. § 1621.

On November 19, 2007, defendant filed a motion to dismiss the indictment based on misconduct (document number 36). This motion was filed on November 19, 2007, without leave to file it

out of time, even though the deadline for filing pretrial motions had passed more than nine months earlier (all pretrial motions were due by February 6, 2007). In support of his motion, defendant states in part as follows:

> [T]he testimony of Special Agent Schaefer before the grand jury and his statement to defense counsel were calculated to mislead the grand jury and defense counsel: the fact is that no check exists. If the grand jury had honestly been told that no check exists; if the grand jury had honestly been told that Carol Henderson stated categorically, and with clear memory, that the event did not occur, would Carl Bussey be facing a trial? I don't think so.

On November 30, 2007, the government filed a response in opposition to defendant's motion (document number 53) arguing that absent proof that a government witness or prosecutor deliberately lied, recklessly disregarded the truth, or committed perjury in testifying before the grand jury, and the misstatement is material to the charge, there is no legal basis for dismissing an indictment.

I held a hearing on defendant's motion on December 4, 2007. Defendant was present, represented by Patrick Peters and Shelley Peters. The government was represented by Assistant United States Attorneys Linda Marshall and Matt Whitworth. Special Agent Robert W. Schaefer testified, and the following exhibits were admitted:

> Court's Ex. 2   Transcript of Special Agent Schaefer's testimony before the grand jury on September 13, 2006

2

    Court's Ex. 3  Transcript of Special Agent Schaefer's testimony before the grand jury on January 5, 2007

    P. Ex. 1  Subpoena to Bank of America

    P. Ex. 2  Copy of a letter received by Special Agent Schaefer from Bank of America in response to the subpoena.

    P. Ex. 4  Subpoena to Carol Henderson

    D. Ex. 1  Copy of P. Ex. 1 with business card of Special Agent Schaefer stapled on top and stamps placed on the subpoena by the bank

## II. FINDINGS OF FACT

Based on the evidence presented at the hearing, I make the following findings of fact:

1. During an investigation of Judge Deborah Neal, Judge Neal told authorities that she had gone to defendant's law office sometime between 1997 and 2000, that defendant had written a check on his trust account to Carol or Carolyn, that the check was given to Carol or Carolyn and she signed it, that the check was then taken by Judge Neal and defendant to Bank of America where it was cashed and the cash was given to Judge Neal (Tr. at 23, 55). Special Agent Bob Schaefer believes the person referred to by Judge Neal was Carol Henderson, defendant's former secretary (Tr. at 19, 23).

2. Carol Henderson was served with a subpoena to appear personally before the grand jury (Tr. at 19, 22).

3. Special Agent Bob Schaefer interviewed Carol Henderson on May 25, 2006 (she was reinterviewed on July 5, 2006) (Tr. at 19, 62). His opinion was that Ms. Henderson was in poor health at the time (Tr. at 19). Ms. Henderson had a caregiver at the time and was not able to care for herself (Tr. at 19). Ms. Henderson denied any knowledge of the check described by Judge Neal (Tr. at 62).

4. Special Agent Schaefer spoke both to Ms. Henderson and to her caregiver about Ms. Henderson's physical condition (Tr. at 19). He was told that Ms. Henderson had recently had a brain tumor removed and was still suffering from dizzy spells now and then (Tr. at 20). When he asked about the grand jury subpoena and whether Ms. Henderson would be physically able to testify, she said she could but they would rather her not (Tr. at 20, 24-25). Based on Ms. Henderson's appearance and Special Agent Schaefer's personal experience with someone who had had a brain tumor, it was his opinion that Ms. Henderson was not going to live much longer and that this subpoena would be a burden on her (Tr. at 20, 25). He reported this opinion to the Assistant United States Attorney on the case (Tr. at 20).

5. Special Agent Schaefer believed that a brain tumor meant cancer (Tr. at 20). Special Agent Schaefer's father previously passed away due to a cancerous brain tumor (Tr. at 20-21). His father passed away about three months after he had been

4

diagnosed (Tr. at 21). Special Agent Schaefer had the same impression of Ms. Henderson when he saw her and believed that she was near death based on his past experience and on the impression he got from both her and her caregiver (Tr. at 21).

    6.    After talking with the Assistant United States Attorney, Special Agent Schaefer called Ms. Henderson and told her she did not have to appear before the grand jury (Tr. at 27). This was not done for any kind of strategic or tactical reasons, it was done because of her health (Tr. at 60). Her denial of any knowledge of a check written by defendant with the proceeds going to Judge Neal was relayed to the grand jury by Special Agent Schaefer (Tr. at 62).

    7.    Special Agent Schaefer recently spoke with Ms. Henderson who is in a lot better health now than she was in May of 2006 (Tr. at 21).

    8.    In response to a subpoena to produce bank records before the grand jury, Bank of America delivered bank records to Special Agent Schaefer along with a letter indicating that the following records were being sent:

    a.    Signature cards and other account opening documents

    b.    Statements on the first account from March 1999 through February 2000

5

c.   Statements on the second account from April 1999 thorough January 2003

   d.   Statements on the third account from March 1999 through January 2003

   e.   Statements on the fourth account from June 2001 through January 2003

   f.   Statements on the fifth account from March 1999 through January 2003.

   9.   Special Agent Schaefer reviewed these bank records and did not locate a check that matched the description given by Deborah Neal (Tr. at 32). Special Agent Schaefer did not return the bank records to the grand jurors; however, at some point in the future he was asked by a grand juror whether he had found the check he was looking for, and Special Agent Schaefer told the grand jury he had not (Tr. at 33). He told the grand jury what years were covered by the bank records, and he told them that defendant had provided some bank records that had not been available through the bank and that Special Agent Schaefer had reviewed those as well (Tr. at 33). He told the grand jury that he had not found the check he was looking for in those additional records produced by defendant, but that some records were still missing (Tr. at 34). Special Agent Schaefer was missing almost the entire year of 1999 records from defendant's trust account (Tr. at 42). He only had the records on that account from

6

September through December, and those had been provided by Bank of America (Tr. at 42-43).

    10. Many times documents sought through a subpoena duces tecum will be produced well before the actual return date (Tr. at 57-58). In that case, the agent can review the records prior to the date he makes the return to the grand jury and can tell the grand jury what is in the records rather than just telling them that the records have been produced (Tr. at 58). On some occasions when records are voluminous, the agent will take a sampling of the records to the grand jury and advise that all of them can be brought if the grand jury wishes to see them (Tr. at 58).

    11. In this case, all of the records produced by Bank of America were brought to the grand jury (Tr. at 59). The records produced by defendant were not provided to the grand jury (Tr. at 59). Those records were not obtained by grand jury subpoena (Tr. at 59).

    12. Numerous individuals were subpoenaed to testify before the grand jury in this case and the case of Deborah Neal (Tr. at 35). The majority of those individuals did not appear before the grand jury, rather they went to the United States Attorney's Office and were interviewed by Special Agent Schaefer and a prosecutor (Tr. at 35-36). Once they received the subpoenas, those individuals called the United States Attorney's Office and

7

were told they could come to the office and be interviewed rather than appearing before the grand jury (Tr. at 36). That has always happened frequently, individuals giving interviews to the prosecutor rather than appearing before the grand jury (Tr. at 36, 38). The agents and prosecutors do not contact the witness, the witness contacts the prosecutor (Tr. at 39). Many times the witness will ask the agent during service of the subpoena whether the person can contact the prosecutor about being interviewed instead of appearing before the grand jury (Tr. at 57). The agent would then prepare a 302, and the witness would be excused from appearing before the grand jury (Tr. at 37, 57).

### *III. MISCONDUCT BEFORE THE GRAND JURY*

"Grand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden." United States v. Kouba, 822 F.2d 768, 774 (8th Cir. 1987); United States v. Hintzman, 806 F.2d 840, 843 (1986). Dismissing an indictment due to grand jury abuse is appropriate only upon a showing of actual prejudice to the accused. United States v. Carr, 764 F.2d 496 (8th Cir. 1985). In addition, dismissal normally requires proof that (1) a government witness or prosecutor deliberately lied, recklessly disregarded the truth, or committed perjury in testifying before the grand jury; and (2) the misstatement was material to the charge. United States v. Rodriguez, 414 F.3d 837, 842-43 (8th

8

Cir. 2005); United States v. Moore, 184 F.3d 790, 794 (8th Cir. 1999); United States v. Johnson, 767 F.2d 1259, 1275 (8th Cir. 1985); United States v. Levine, 700 F.2d 1176, 1180 (8th Cir. 1983).

> Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. Over the years, we have received many requests to exercise supervision over the grand jury's evidence-taking process, but we have refused them all, including some more appealing than the one presented today. In United States v. Calandra, [414 U.S. 338 (1974)], a grand jury witness faced questions that were allegedly based upon physical evidence the Government had obtained through a violation of the Fourth Amendment; we rejected the proposal that the exclusionary rule be extended to grand jury proceedings, because of "the potential injury to the historic role and functions of the grand jury." 414 U.S. at 349. In Costello v. United States, 350 U.S. 359 (1956), we declined to enforce the hearsay rule in grand jury proceedings, since that "would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules." Id., at 364.
>
> [A]ny power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings. It certainly would not permit judicial reshaping of the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself. . . . As we proceed to discuss, that would be the consequence of the proposed rule here.

United States v. Williams, 504 U.S. 36, 49-50 (1992).

As discussed by the Supreme Court in Williams, a defendant may not challenge an indictment on the basis of inadequate or incompetent evidence before the grand jury, that the prosecutor failed to present exculpatory evidence, or that the grand jury

9

relied on hearsay evidence. A false statement in grand jury testimony does not justify dismissal of the indictment where the statements do not rise to the level of perjury -- an intentional, voluntary, and knowing false statement. United States v. Johnson, 767 F.2d 1259, 1275 (8th Cir. 1985).

In this case, Special Agent Schaefer told the grand jury that Carol Henderson had brain cancer. His statement was based on his own experience with his father, which resulted in Schaefer's belief that a brain tumor would necessarily be cancerous. There is no evidence that Special Agent Schaefer intentionally provided a false statement. In addition, Ms. Henderson's statement that she does not remember ever participating in signing or cashing a check written by defendant with the proceeds going to Judge Neal was relayed to the grand jury.

There is no evidence of any material misrepresentation by Special Agent Schaefer about the missing bank records. In addition, there is no dispute that Special Agent Schaefer told the grand jury that he had not been able to find the check described by Judge Neal as having been written by defendant.

Because defendant has not met his burden of showing that any intentional or reckless misstatement was presented to the grand jury or that he was prejudiced in any way by anything that

10

occurred before the grand jury, his motion to dismiss should be denied.

## IV. CONCLUSION

I find that defendant has failed to meet his burden of overcoming the strong presumption of regularity before the grand jury.  Therefore, it is

RECOMMENDED that the court, after an independent review of the pleadings and applicable law, enter an order denying the defendant's motion to dismiss the indictment based on misconduct.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of receipt of a copy of this report and recommendation to file and serve specific objections unless an extension of time for good cause is obtained.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
December 14, 2007

11